STATE OF OKLAHOMA ON THE RELATION OF WEST, ATTORNEY GENERAL, *v.* CHICAGO, ROCK ISLAND AND PACIFIC RAILWAY COMPANY.

ERROR TO THE SUPREME COURT OF THE STATE OF OKLAHOMA.

No. 96. Argued March 13, 1911.—Decided April 3, 1911.

*Oklahoma v. Atchison, Topeka & Santa Fe Railway Co., ante,* p. 277, followed to effect that an act of Congress granting rights of way to a railroad company through a Territory and reserving the right to regulate charges until organization of a state government, which should then be authorized to fix and regulate charges, ceased to be operative when the State was organized.

The operative effect of the act of Congress of March 2, 1887, c. 319, 24 Stat. 446, regulating charges of a railway in Oklahoma Territory having ceased by its own terms on Oklahoma becoming a State, the question of what rights the State had in that respect under the Enabling Act is merely an abstract one.

Whether rates of a railway within the territory of a new State are illegal depends upon the law of the State, subject to the constitutional protection of the railway company against undue exactions without due process of law, and not upon acts of Congress affecting such rates passed prior to the formation of the State and which by their own terms expressly cease to be operative after the formation of the State.

THIS action was brought by the Territory of Oklahoma in one of its courts against the Chicago, Rock Island and Pacific Railway Company, for the purpose of obtaining an injunction restraining the railway company from making certain charges against the inhabitants of the Territory for the transportation of freight.

The petition showed that, by the act of Congress of March 2, 1887, c. 319, 24 Stat. 446; a right of way through

the Territory was granted to the Chicago, Kansas and Nebraska Railway Company upon certain conditions, one of which was that the company should not charge the "inhabitants of the Territory" a greater rate of freight than that authorized by the State of Kansas for transportation service of the same kind; that under the authority of the act of Congress of June 27, 1890, c. 633, 26 Stat. 1811; the Chicago, Rock Island and Pacific Railway Company, a state corporation, the defendant herein, acquired all the rights, privileges and franchises granted to and became subject to all the burdens imposed upon the original grantee company, and that the defendant occupied and used said right of way; but in violation of the act of Congress and of the rights of the inhabitants of the Territory, it daily charged shippers of wheat a greater rate for shipping than was authorized by the laws of Kansas. The relief asked by the Territory was an injunction restraining the railway company from demanding, collecting, receiving or charging, directly or indirectly, greater rates for the transportation of freight and goods, according to local distance, than those named in the petition, which, it is alleged, are in accordance with the conditions upon which Congress granted the right of way through the Territory of Oklahoma.

The railway company, by its answer, denied the allegations of the petition, and, in addition, alleged that the court was without jurisdiction of the subject-matter of the action, and that jurisdiction was vested exclusively in the Interstate Commerce Commission and the Circuit Court of the United States. The Territory filed a reply and the court granted a temporary injunction restraining the railway company, until the further order of the court, from demanding, collecting, receiving or charging for the transportation of freight greater rates than those named in the order of injunction.

From the order of injunction the case was taken on ap-

peal to the Supreme Court of the Territory, and was afterwards "transferred to the Supreme Court of the State under the terms of the Enabling Act and the Schedule to the constitution." It is so stated in the opinion of the Supreme Court of the State. By the Enabling Act of June 16, 1906, it was provided that "all cases pending in the supreme court of said Territory and in the United States court of appeals in the Indian Territory not transferred to the United States circuit and district courts in said State of Oklahoma shall be proceeded with, held, and determined by the supreme or other final appellate court of such State as the successor of said Territorial supreme court and appellate court, subject to the same right to review upon appeal or error to the Supreme Court of the United States now allowed from the supreme or appellate courts of a State under existing laws. Jurisdiction of all cases pending in the courts of original jurisdiction in said Territories not transferred to the United States circuit and district courts shall devolve upon and be exercised by the courts of original jurisdiction created by said State. That the supreme court or other court of last resort of said State shall be deemed to be the successor of said Territorial appellate courts and shall take and possess any and all jurisdiction as such, not herein otherwise specifically provided for, and shall receive and retain the custody of all books, dockets, records, and files not transferred to other courts, as herein provided, subject to the duty to furnish transcripts of all book entries in any specific case transferred to complete the record thereof." 26 Stat. 267, 276, c. 3335, § 17.

Upon the authority of one of its former cases, *Chicago, R. I. & P. Ry. Co.* v. *Territory,* 21 Oklahoma, 329, the Supreme Court of the State dismissed the present case, "for the reason that the change from a territorial form of government to Statehood so changed conditions that the questions involved, while they may have been vital

enough at the time the cases were appealed to the Supreme Court of the Territory, are now merely abstract, hypothetical questions, from the determination of which no practical relief can follow." Thereupon the State sued out the present writ of error.

*Mr. Charles West,* Attorney General of the State of Oklahoma, for plaintiff in error.

*Mr. M. A. Low* for defendant in error.

Mr. Justice Harlan, after making the foregoing statement of the case, delivered the opinion of the court.

The State contends that this court has authority, under § 709 of the Revised Statutes of the United States, to review the final judgment of the Supreme Court of Oklahoma, and that the dismissal of the case without giving the State the relief asked was a denial of its right, based on the Enabling Act of Congress, to have the railway company restrained from charging the people of the State, doing business with it, with greater rates of freight than were allowed by Kansas for like services.

We concur with the Supreme Court of the State in the view that this question, raised by the original petition, has become and is wholly abstract.

The Chicago, Rock Island and Pacific Railway Company is the successor in interest, subject to all the burdens imposed and having all the rights granted by the act of Congress of March 2d, 1887, 24 Stat. 446. The Chicago, Kansas and Nebraska Railway Company, the predecessor in interest of the present defendant, was, as we have seen, authorized to locate and maintain a railway through the Indian Territory, charging the inhabitants of said Territory no greater rate of freight than the rate authorized by the laws of Kansas for services or transportation of the

same kind. But by the same act Congress reserved "the right to regulate the charges for freight and passengers on said railway *until* a State government shall exist in said Territory within the limits of which said railway or a part thereof shall be located; and *then* such State government or governments shall be authorized to fix and regulate the transportation of persons and freights within their respective limits by said railway." The same provision was in the act of July 4, 1884, granting a right of way through the Indian Territory to the Southern Kansas Railway Company.

In No. 13 Original, just decided, *ante,* p. 277, the provision in the act prohibiting the inhabitants of the Territory from being charged greater rates than those allowed in Kansas was held not to be binding when the state government was established, in Oklahoma, after which the whole subject of rates passed under the control of the State. Whatever may have been the rights of the inhabitants of the Territory and of the railway company, under the act of 1887, the State cannot insist that under the authority of the United States and after Oklahoma became a State, that the railway company was bound to accept, in the matter of rates for domestic business, the test furnished by the laws of Kansas. Whether any particular rates charged by the railroad company after Oklahoma became a State were illegal, as being unreasonable and purely arbitrary, depended upon the laws of that State touching the matter or upon the provision of the Federal Constitution, protecting property against undue exactions without due process of law.

Passing by other questions, the determination of which cannot affect the result, we hold, for the reasons stated by it, that the judgment of the state court was right, and its judgment must be affirmed.

*It is so ordered.*